IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-01151-RBJ-MEH

HAROLD TRUJILLO

 Plaintiff,

v.

ATMOS ENERGY CORPORATION, a Texas Corporation

 Defendant.

---

# ORDER

---

This case comes before the Court on defendant's motion for summary judgment [docket #37].

**Facts**

The following uncontroverted facts are taken from the parties' pleadings. [docket ##38 and 51]. Harold Trujillo was employed by Atmos Energy Corporation ("Atmos") on June 18, 1983 and remained an Atmos employee until he terminated on May 12, 2009. Mr. Trujillo was a satisfactory employee during his career with Atmos.

On April 21 and 22, 2009 Mr. Trujillo and three other employees were working on a job site in Durango, Colorado where they were tasked with moving 36 feet of pipe to accommodate the widening of Colorado Highway 160. On the second day an inspector from the Occupational Safety and Health Administration ("OSHA") inspected the site for potential violations of OSHA standards. As a result, Atmos received citations for safety violations including (1) improper shoring, sloping, or shielding for an excavation of five feet or more in depth; and (2) improper

1

storage of excavated material.  These citations resulted in Atmos' paying a penalty to OSHA in the amount of $20,000.00.

In addition to the OSHA investigation, Atmos conducted its own internal investigation. After completing this investigation, Atmos terminated two of the four workers at the job site.  Of the four workers at the job site, three of them -- Mr. Trujillo, Danny Lucero, and Sterling Balliger --were qualified as "competent persons" under OSHA standards.  A "competent person" is defined as "one who is capable of identifying existing and predictable hazards in the surroundings, or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them." 29 C.F.R. § 1926.650(b).  Mr. Trujillo and Mr. Lucero were terminated.  Mr. Balliger and the fourth worker involved, Justin Dufva, were retained as employees of Atmos.  At the time of termination, Mr. Trujillo had been employed by Atmos for nearly 26 years and was 59 years old. Mr. Lucero had been employed by Atmos for 29 years and was 57 years old.  Mr. Balliger had worked for Atmos for approximately one year and was 21 years old.  Mr. Dufva had worked for Atmos for less than three months and was 22 years old.

After exhausting his remedies with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission, Mr. Trujillo filed this lawsuit, asserting violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; Title VII of the Civil Rights Act, 42 U.S.C. 2000(e); and several state law claims, over which this Court has supplemental jurisdiction.  Mr. Trujillo later filed an unopposed motion to dismiss his second and third claims of relief [#43], which asserted Title VII claims based upon race or national origin.  The Court granted that motion.  [#45].  Atmos now seeks dismissal of Mr. Trujillo's remaining claims.

**Standard of Review**

The Court must grant a motion for summary judgment when no genuine issue of material fact exists. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if the evidence is such that a jury could find for the nonmoving party. *Id.*

The party that moves for summary judgment bears the burden of proving that no genuine issue of material fact exists on all claims for which it seeks summary judgment. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the movant does not have the ultimate burden at trial, it may succeed on a motion for summary judgment when it has shown the court that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The court must view the evidence presented and draw all reasonable inferences from it in the light most favorable to the nonmoving party. *Adamson v. Multi Cmty Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). However, unsupported conclusory claims are insufficient to survive a motion for summary judgment. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 785 (10th Cir. 2004).

**Conclusions**

First Claim for Relief: Violation of the Age Discrimination in Employment Act

Atmos moves for summary judgment on the First Claim, arguing that Mr. Trujillo cannot establish a prima facie case of age discrimination. Atmos also argues that even if Mr. Trujillo can establish a prima facie case, Atmos had a legitimate non-discriminatory reason for terminating him, and that Mr. Trujillo cannot prove that Atmos' reason was pretextual.

A plaintiff establishes a prima facie case of age discrimination if he shows that he was "(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age." *Adamson,* 514 F.3d at 1146.  The Court finds that Mr. Trujillo has presented at least some evidence on each of the four requirements.

- It is undisputed that Mr. Trujillo was within the protected age group.
- Mr. Trujillo was a "competent person" under OSHA standards, and it is undisputed that he had performed his job duties satisfactorily for almost 26 years until the April 21-22, 2009 worksite incident.  Atmos argues that Mr. Trujillo was no longer qualified for his position of distribution operator because of his actions related to the worksite incident which resulted in Atmos being cited by OSHA.  The Court finds that whether Mr. Trujillo was performing his work satisfactorily and was qualified for his position is a genuine issue of material fact.
- It is undisputed that Mr. Trujillo was terminated from employment.
- Finally, Atmos admits that it replaced Mr. Trujillo with someone younger than 40 years of age.  Response to Request for Admission No. 11 [#51-3, p. 24].

If the plaintiff successfully carries his burden of establishing a prima facie case of age discrimination, the defendant then has the burden of offering a legitimate non-discriminatory reason for terminating the plaintiff.  *See id.*  Atmos' proffered reason is that Mr. Trujillo violated Atmos' and OSHA's safety standards, which appears to be undisputed.  Both parties acknowledge that the burden is then on the plaintiff to offer evidence that age was a determining factor in motivating the challenged decision, essentially that the reason given was pretextual. *See Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir. 1994).

Mr. Trujillo offers several pieces of evidence in support of his claim that the given reason for his termination was pretextual. In his deposition Mr. Trujillo testified that members of management regularly referred to him as "Grandpa." Trujillo Depo. [#38-10] at 127-29. However, he admitted that he believed that his supervisor, Troy Thatcher, "was just joking" when he called Mr. Trujillo "Grandpa." *Id.* at 122-23. Mr. Trujillo testified that he believed that management wanted to eliminate older workers because of their higher hourly wages. Trujillo Depo. [#51-4] at 21-22. However, his opinions, by themselves, do not establish a material factual dispute regarding the defendant's motivation. *See Webb v. Level 3 Communications, LLC,* 167 F. App'x 725, 730 (10th Cir. 2006)(unpublished). Mr. Trujillo has presented with no other evidence to support his contention that defendant sought to terminate older employees in order to avoid paying higher hourly wages.

More importantly, however, there were three employees on the work site that were qualified to be "competent persons." The two who were terminated belonged to the protected age class; the third, who was only warned, did not. Atmos suggests that the reason it did not terminate Mr. Balliger and Mr. Dufva was that they had only worked for the company a short time. That can cut both ways in the context of an age discrimination claim. Additionally, as indicated, Atmos has admitted that Mr. Trujillo was replaced with a younger individual.

The Court does not weigh the evidence and make findings of fact on a motion for summary judgment. The Court only determines whether there is a genuine dispute concerning a material fact. The Court finds that there is a genuine issue of material fact as to whether age was a determining factor in Mr. Trujillo's termination. Therefore, the motion for summary judgment as to plaintiff's First Claim for Relief is denied.

Fourth Claim for Relief: Promissory Estoppel

Plaintiff asserts separate claims (numbers Four and Five) based upon promissory estoppel and breach of implied contract. In its motion for summary judgment defendant treats the two claims together, and in his response plaintiff follows the defendant's lead. It appears to this Court that plaintiff did not fully understand, or at least did not clearly articulate, the nature of his estoppel claim when he filed his amended complaint. The briefing of the motion for summary judgment has further confused what the claim is and is not. In substance, the Fourth Claim, styled as a promissory estoppel claim, seems to be based on non-discrimination and safety policies. The Fifth Claim, styled as an implied contract claim, has evolved into a combined contract and estoppel claim based upon the company's progressive discipline policy.

Generally speaking, and without specific reference to employment claims, "[t]he elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008).

In Mr. Trujillo's amended complaint [#17] he alleges in a conclusory fashion that Atmos violated its anti-discrimination policies, s*ee id.* ¶¶35-36, 40, 46, 51, and he incorporates those allegations into his Fourth Claim. Within the Fourth Claim itself he makes similarly conclusory allegations that Atmos failed to follow unidentified policies, practices and procedures regarding his employment, and that he relied on those policies, practices and procedures. *Id.* ¶54-57.

In response to the motion for summary judgment [#51], Mr. Trujillo asserts that Atmos failed to adhere to its own safety policies. *Id.* at 5 (numbered paragraphs 3, 4). He presents some evidence to that effect. *See id.* at 4-5 (numbered paragraphs 1 and 2) and 7 (numbered paragraph 9). However, with the possible exception of his argument regarding the progressive discipline policy, which I will discuss in connection with his Fifth Claim, Mr. Trujillo does not explain or demonstrate how Atmos' alleged violation of its own policies creates a promissory estoppel claim. In a promissory estoppel claim, the injured party must demonstrate that he has acted or foregone some action because he reasonably relied on some promise made to him. Except, again, as is discussed with reference to the progressive discipline policy, Mr. Trujillo has not articulated what action he took or chose not to take in reasonable reliance on a promise made by Atmos.

Accordingly, the Court grants the motion for summary judgment as to the Fourth Claim, meaning that any and all claims based upon a theory of promissory estoppel other than in relation to the progressive discipline policy are dismissed with prejudice.

Fifth Claim for Relief: Breach of Contract

In the First Amended Complaint [#17] plaintiff repeats the same type of vague and conclusory allegations in support of his implied contract claim that characterized his promissory estoppel claim. *See id.* ¶¶ 62-68. However, in its brief in support of its motion for summary judgment defendant anticipated that what plaintiff might be claiming in his fourth and fifth claims is that they would be based on Atmos' progressive discipline policy. Whether or not that was plaintiff's original intent, he picked up on that theme in his Response [#51] at 11-12: "Finally, a triable issue of material fact exists, as stated in Plaintiff's First Amended Complaint

7

in that he had a reasonable expectation that the employer would follow its articulated progressive discipline policy, including in the context of the safety rule violation.".

In Colorado, "an employee who is hired for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Crawford Rehabilitation Services Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997). Mr. Trujillo was an at-will employee. However, Colorado courts have also recognized that an at-will employee might be able to enforce termination procedures in an employee handbook under an implied contract or a promissory estoppel theory in some circumstances. *E.g. Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711-12 (Colo. 1987); *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. App. 1997).

To enforce termination procedures in an employee handbook, the employee must demonstrate that the employer manifested his willingness to enter into a bargain, and that the employee's initial or continued employment constituted acceptance of and consideration for the procedures. *Continental Air Lines,* 731 P.2d at 711. On a promissory estoppel theory, the employee must demonstrate that the employer should reasonably have expected the employee to consider the employee manual as a commitment to follow the termination procedures, that the employee relied on those procedures to his detriment, and that injustice can be avoided only by enforcement of the procedures. *Id.* at 712.

Whether a valid employment contract exists between the parties is generally an issue of fact, which falls within the jury's province. However, "the issue may be decided as a matter of law if the alleged promises are nothing more than 'vague assurances.'" *Vasey v. Martin Marietta*

*Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994). This would similarly apply to a promissory estoppel claim. *See id.* at 1466.

Atmos makes four arguments as to why plaintiff's implied contract and promissory estoppel claims based upon Atmos' progressive discipline policy should be dismissed. Brief [#38] at 18-22. I consider those arguments with the foregoing principles of law in mind.

Disclaimer

First, Atmos points to the following statement in its employee handbook: "Neither this handbook nor the policies and procedures contained in ADOC (Atmos Documentation System) constitute a contract of employment, or create any contractual rights in favor of the company or any of its employees." Your Employee Handbook [#38-18] at 3.[1] It is undisputed that Mr. Trujillo received and acknowledged in writing that he received the handbook. Oddly, neither party states, so far as I can determine, whether the progressive disciplinary policy, entitled "Progressive Discipline Policy and Procedures" [#38-22], is found in the employee handbook or in ADOC. If not, then the disclaimer would not apply. An implied contract or promissory estoppel claim can be based on an employer's policy documents other than an employee handbook. *See Allabashi v. Lincoln Nat. Sales Corp. of Colorado,* 824 P.2d 1, 3 (Colo. App. 1991). The progressive discipline policy does not contain its own disclaimer as such. For present purposes, however, I will assume that the progressive discipline policy is contained in the handbook or ADOC or both.

"Summary judgment denying claims based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." *Ferrera v. Nielson,* 799 P. 2d 458, 461 (Colo. App. 1990). I conclude as a matter

---

[1] Atmos also cites a disclaimer in its Code of Conduct. However, plaintiff does not rely on the Code of Conduct for its implied contract and promissory estoppel claim, and I therefore need not address it.

of law that the disclaimer in the employee handbook was not clear and conspicuous and, therefore, that it did not effectively disclaim potential liability based upon the progressive discipline policy. The sentence is found located in the middle of a paragraph with no language preceding it to indicate its importance. It makes no reference to an employee's at-will status. It stands in contrast, for example, with the language discussed in *Ferrera*, 799 P.2d at 461 (where the disclaimer was labeled "IMPORTANT" and placed on the first page of employee handbook) and by Judge Babcock in *Silchia v. MCI Telecommunications Corp.,* 942 F. Supp. 1369, 1374-75 (D. Colo. 1996)(specific and conspicuous disclaimers in both the employment application and the employee handbook).

### Communication to the Employee

Second, Atmos argues that the policy must have been communicated to and relied upon by the employee. Atmos points to Mr. Trujillo's admission, when he was shown a copy of the Progressive Discipline Policy and Procedures, that he could not recall seeing it. Trujillo Depo. [#38-10] at 176.

However, Mr. Trujillo also testified that "the company" said that an employee had to be written up, warned, and written up again, and that if the employee still kept doing the things about which he had been written up, then the company would let him go. *Id.* at 137. In response to a leading question as to whether the company said those things in its progressive discipline policy, Mr. Trujillo answered, "I believe I read it on there, yeah." *Id.* He also testified that he "heard them talk about it." *Id.* at 177. Finally, I note that, when discussing the disclaimer issue, defendant noted that Mr. Trujillo received and acknowledged receipt of the employee handbook. If the Progressive Discipline Policy and Procedures are contained in that handbook, then it was presumably communicated to Mr. Trujillo at least in that sense. Even if that policy is not

contained in the handbook, I assume that it must have been communicated to employees in some fashion.

To make out an implied contract, the progressive discipline policy must have manifested Atmos' willingness to enter into a bargain, and Atmos must have received consideration in the form of the employee's continued employment. These terms do not specify how the policy was made known to the employee. However, to support a promissory estoppel theory, Mr. Trujillo must demonstrate that he relied on the policy to his detriment. The Court concludes that there are material issues of disputed fact genuinely in dispute concerning whether, when and how Mr. Trujillo learned of the policy and whether he relied on it to his detriment.

<u>Are terms sufficiently definite?</u>

Third, Atmos argues that the terms of the progressive discipline policy are too indefinite to support either an implied contract or a promissory estoppel claim. I conclude that this too presents disputed issues of material fact.

The policy [#38-22] states that it provides "guidelines for using progressive methods to correct an employee's inappropriate behavior and conduct as well as unacceptable or unsatisfactory performance." *Id.* Its "General Provisions" state:

> 1.Disciplinary action is administered in a prompt, fair and uniform manner guided by our Company's values utilizing any one of the following four measures: verbal warning, written warning, final warning or termination of employment.
>
> 2.Each supervisor, in consultation with local Human Resources, is responsible for determining the appropriate disciplinary action to be taken based on the totality of the facts and circumstances pertaining to each situation. The stage at which the warning procedures will be initiated depends upon the nature and severity of the problem and the employee's past work record. Where appropriate, the supervisor may suspend the employee without pay. In cases of severe misconduct or continued deterioration of behavior, conduct or performance, immediate dismissal may be necessitated. In addition, the Company may, at its discretion, seek to recover damages, if any, resulting from the behavior and conduct of any employee.

> 3. Given the scope and nature of the employment relationship, it is impossible to establish specific action to address each and every situation that may arise; therefore, these steps serve as general guidelines. Although progressive in nature, these actions may be repeated or skipped whenever appropriate to the situation.

Thus, the General Provisions reiterate that the steps of the progressive discipline policy serve as general "guidelines" which may be "skipped whenever appropriate to the situation." *Id.* ¶3.

However, apropos to the present case, the policy expressly states that immediate dismissal may be necessitated "in cases of severe misconduct or continued deterioration of behavior. *Id.* ¶2. Contract interpretation is a matter for the Court. The Court interprets that language as a representation that Atmos will not jump immediately to termination unless the employee has engaged either in "severe misconduct" or in "continued deterioration of behavior."

I also conclude that this term is not so vague or indefinite as to justify summary judgment as a matter of law. I have considered the cases on which Atmos relies. In *Richmond v. ONEOK, Inc.,* 120 F.3d 205 (10th Cir. 1997), the employee handbook, after stating that "the employment relationship is at will and may be terminated by the employee or the Company at any time for any reason, with or without notice," continued: "Depending on the nature and seriousness of the violation and the past work record of the employee, discipline may begin with reminder counseling or disciplinary counseling or decision-making leave or termination. Continued inability or unwillingness to adhere to work rules during any stage of this discipline procedure will result in termination." Addressing the employee's contention that this was a progressive discipline policy and created an implied contract, the court held: "The manual does not mandate that progressive discipline be imposed, but only states that such discipline *may* be imposed, at

the supervisor's discretion. No reasonable employee could view the handbook as creating an implied contract." *Id.* at 210 (emphasis in the original).

I do not disagree with the result in that case, and in any event, I am bound by Tenth Circuit precedent. However, I conclude that the case does not compel dismissal of the Fifth Claim in the present case. Here, not only was there no contiguous indication that employment is at will and may be terminated at any time, but Atmos' policy contains a much stronger representation that immediate termination would be used only in the case of "severe misconduct" or "continued deterioration of behavior."

Atmos also cites *Baucom v. Amtech Systems Corp.,* 1997 WL 748668 (10th Cir. 1997)(unpublished). There the employee handbook contained a progressive discipline provision similar to that of Atmos. It provided that employee discipline would follow successive steps of verbal warning, written warning, suspension without pay, and termination; that "any step can be skipped depending on the case history and/or the seriousness of the offense;" and that "[i]n the case of … serious breaches, the Company may terminate employment immediately." *See id.* at *6. In addition, according to the employee, when the company's human resources representative gave him the handbook, she told him that he could only be terminated for cause. *Id.* at *5. The court did not comment on the effect of the progressive discipline policy as such. Rather, it found, viewing the evidence in light most favorable to the plaintiff, that a genuine issue of material fact existed as to whether the human resource representative's oral statement gave rise to an implied contract requiring the employer to have cause for termination. *Id.* at *6. Summary judgment in favor of the employer was nevertheless affirmed, because the employee had not raised a genuine issue of material fact concerning the existence of proper cause. *Id.*

The *Baucom* opinion was unpublished and expressly indicated that it had no binding precedential value. In any event, the court did not address whether the progressive discipline policy in that case could have supported an implied contract or promissory estoppel claim without the oral statement that an employee could only be terminated for cause. Here we have a strongly worded written policy and some evidence that Mr. Trujillo had heard talk from "them," presumably meaning supervisors, that progressive discipline would be used. I conclude that this policy, as worded and in that context, does present a genuine issue of material fact.

Did Atmos violate its policy?

Fourth and finally, Atmos argues that it did not violate its progressive discipline policy. It is undisputed that Mr. Trujillo, as a "competent person" and an experienced employee, knew OSHA's requirements for a safe trench. He has acknowledged that when he arrived on the site on April 22, 2009 he recognized that the trench did not meet those requirements. Trujillo Depo. [#38-10] at 14-15. He discussed that with the crew on site. *Id.* at 15; 41-42. Mr. Lucero said that it was as good as it was going to get, and Mr. Trujillo said "okay" and went on with his job in the non-complying trench. *Id.* at 42. Arguably, these actions from an experienced and trained employee constitute "severe misconduct."

On the other hand, there is evidence in the record that Mr. Trujillo had never before violated Atmos' safety policies. There is evidence that he had raised concerns about other non-compliant trenches with management in the past, but that his complaints had been ignored. Trujillo Depo. [#51-4] at 23, 27. There is evidence that Mr. Trujillo believed that his supervisor, Mr. Thatcher, had visited the site and had seen the trench before Mr. Trujillo went to the site. Trujillo Depo. [#51-4] at 50-52. It is undisputed that although Mr. Balliger was qualified as a "competent person," and was a participant on the crew that created and used the non-compliant

trench on April 22, 2009, he received only a warning. There is evidence that the atmosphere at safety meetings was "rather casual," and that management did not indicate that a safety violation would be grounds for (immediate) termination. Trujillo Aff. [#51-2] ¶3.

In sum, the Court finds that whether Atmos violated its own policy, which essentially turns on whether Mr. Trujillo's actions on April 22, 2009 constituted "severe misconduct" or "continued deterioration of behavior" that justified immediate termination, raises a genuinely disputed issue of material fact. This is not a matter of second-guessing Atmos' business judgment. It is a matter of determining whether there was an implied contract (or estoppel), and if so, was it violated. I acknowledge that the Progressive Discipline Policy and Procedures vest Atmos with discretion. That alone, however, does not preclude the existence of a contract. Under Colorado law, "every contract contains an implied covenant of good faith and fair dealing" which requires that a party not exercise its discretion in a manner that defeats the reasonable expectations of the other party. *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995).

For these reasons, the Court denies defendant's motion for summary judgment on the Fifth Claim for relief which the Court has interpreted as encompassing claims of implied contract and promissory estoppel based upon Atmos' alleged violation of its progressive discipline policy.

### Sixth Claim for Relief: Wrongful Termination in Violation of Public Policy

In his Sixth Claim plaintiff alleges that he was terminated in retaliation for his having raised a safety complaint. As with other claims, the allegations in the amended complaint [#17] that apparently relate to this claim are minimal. Plaintiff alleges that he advised "his supervisor" that the trench was too narrow and did not meet OSHA standards. *Id.* ¶25. He asserts that

defendant discharged him because he raised a safety concern about the trench. *Id.* ¶76. Based on the latter conclusory allegation, he asserts that his termination was in violation of public policy. In his response to the motion for summary judgment [#51], he clarifies that his "expressions of concern regarding the trench, as well as his participation in the investigation conducted by the OSHA investigator constituted protected activity that falls within the public policy exception." *Id.* at 14.

First, plaintiff has produced no evidence that he complained to a supervisor about the trench. The evidence is that he told the other crew members when he arrived at the site that the trench did not meet OSHA requirements. In a letter to an OSHA representative dated June 22, 2010 [#51-4], more than one year after he was terminated, he states that prior to his termination his supervisor, Mr. Thatcher, overheard him tell Mr. Lucero that he would never get into a non-compliant trench again, and that it would cost the company a lot of money to get the job done right. He said that he was sure that Mr. Thatcher went to his supervisor, Mr. Murph, and told him about that conversation. *Id.* That is speculation, and even more, it is speculation that this was a cause of his termination. Plaintiff has presented no evidence that raises a genuine dispute of fact concerning this.

To the extent that plaintiff is suggesting that he was terminated because he cooperated with OSHA in its investigation, that too has no evidentiary support. Moreover, he has a statutory remedy if that did happen. OSHA provides remedies for employees who are discharged for seeking to cooperate with enforcement of OSHA standards. *See* 29 U.S.C.A. §660(c). The existence of that statutory remedy precludes his pursuit of a separate public policy wrongful discharge claim based upon his cooperation with OSHA. *See Miles v. Martin Marietta Corp.*, 861 F. Supp. 73, 74 (D. Colo. 1994).

Therefore, the Court grants the defendant's motion for summary judgment on the plaintiff's sixth claim for relief.

**Order**

Defendant's motion for summary judgment [#37] is GRANTED IN PART AND DENIED IN PART.  The Court enters partial summary judgment dismissing plaintiff's Fourth and Sixth Claims for relief.  Summary judgment is denied with respect to plaintiff's Second and Fifth Claims for relief.

DATED this 25st day of June, 2012.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge